UNITED STATES DISTRICT COURT Eastern District of Kentucky
EASTERN DISTRICT OF KENTUCKY        F I L E D
LONDON

MAY 1 8 2005
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 04-251-GWU

ROBERT GROSS,                                         PLAINTIFF,

VS.                    **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                 DEFENDANT.

### INTRODUCTION

The plaintiff brought this action  to obtain judicial review of an administrative

denial of his application for Disability Insurance Benefits (DIB).   The appeal is

currently before the Court on cross-motions for summary judgment.

### APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1.    Is the claimant currently engaged in substantial gainful activity?
If yes, the claimant is not disabled.  If no, proceed to Step 2.
See 20 CFR 404.1520(b), 416.920(b).

2.    Does the claimant have any medically determinable physical
or mental impairment(s)?  If yes, proceed to Step 3.  If no, the
claimant is not disabled.  See 20 CFR 404.1508, 416.908.

3.    Does the claimant have any severe impairment(s)--i.e., any
impairment(s) significantly limiting the claimant's physical or
mental ability to do basic work activities?  If yes, proceed to
Step 4.  If no, the claimant is not disabled.  See 20 CFR
404.1520(c), 404.1521, 416.920(c), 461.921.

1

Gross

4.      Can the claimant's severe impairment(s) be expected to result
        in death or last for a continuous period of at least 12 months?
        If yes, proceed to Step 5.  If no, the claimant is not disabled.
        See 20 CFR 404.920(d), 416.920(d).

5.      Does the claimant have any impairment or combination of
        impairments meeting or equaling in severity an impairment
        listed in 20 CFR Part 404, Subpart P, Appendix 1 (Listing of
        Impairments)? If yes, the claimant is disabled.  If no, proceed
        to Step 6.  See 20 CFR 404.1520(d), 404.1526(a), 416.920(d),
        416.926(a).

6.      Can the claimant, despite his impairment(s), considering his
        residual functional capacity and the physical and mental
        demands of the work he has done in the past, still perform this
        kind of past relevant work?   If yes, the claimant was not
        disabled.  If no, proceed to Step 7.  See 20 CFR 404.1520(e),
        416.920(e).

7.      Can the claimant, despite his impairment(s), considering his
        residual functional capacity, age, education, and past work
        experience, do other work--i.e., any other substantial gainful
        activity which exists in the national economy?   If yes, the
        claimant is not disabled.   See 20 CFR 404.1505(a),
        404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

        Applying this analysis, it must be remembered that the principles pertinent

to the judicial review of administrative agency action apply.   Review of the

Commissioner's decision is limited in scope to determining whether the findings of

fact made are supported by substantial evidence.  Jones v. Secretary of Health and

Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial

evidence" is "more than a mere scintilla[; i]t means such relevant evidence as a

2

reasonable mind might accept as adequate to support a conclusion. . ." Wright v. Massanari, 321 F.3d 611, 614 (6ᵗʰ Cir. 2003) (quoting Kirk v. Secretary of Health and Human Services, 667 F.2d 524, 535 (6ᵗʰ Cir. 1981). It is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 CFR Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

3

Gross

> First, we examine whether there is objective medical evidence of an
> underlying medical condition. If there is, we then examine: (1)
> whether objective medical evidence confirms the severity of the alleged
> pain arising from the condition; or (2) whether the objectively
> established medical condition is of such a severity that it can
> reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir.

1986).

Another issue concerns the effect of proof that an impairment may be

remedied by treatment. The Sixth Circuit has held that such an impairment will not

serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health

and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same

result does not follow if the record is devoid of any evidence that the plaintiff would

have regained his residual capacity for work if he had followed his doctor's

instructions to do something or if the instructions were merely recommendations.

Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106,

1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before

it, despite the plaintiff's claims that he was unable to afford extensive medical work-

ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir.

1987). Further, a failure to seek treatment for a period of time may be a factor to be

considered against the plaintiff, Hale v. Secretary of Health and Human Services,

816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 CFR 416.965(a) and 20 CFR 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 CFR Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent

5

lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 CFR 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 CFR 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 CFR Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony

6

only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Robert Gross, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of discogenic and degenerative disorders of the back, and being status post cervical diskectomy. (Tr. 18). Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that Mr. Gross retained the residual functional capacity to perform a significant number of jobs existing in the economy and, therefore, was not entitled to benefits. (Tr. 20-4). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of the plaintiff's age, education, and work experience could perform any jobs if he were limited to lifting no more than 20 pounds from the waist level, or carrying this weight for any extended distance and time, and lifting no more than 10 pounds from the floor or engaging in any repetitive lifting from the floor, could not make any extensive or repetitive use of his arms for pushing, pulling, grasping, holding, carrying, or activities above shoulder level, and could perform no activities requiring frequent squatting, kneeling, crouching, bending, prolonged standing, or riding in or on vibratory vehicles for any extended distance or time. (Tr. 341). The VE responded

that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies. (Tr. 342-3).

On appeal, this Court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition.

Mr. Gross alleged disability due to a ruptured desk and pinched nerves in his lower back, and residuals of a cervical diskectomy and fusion. (Tr. 85). At the administrative hearing, he testified that his lower back problems had existed since 1991, and his treating orthopedic surgeon, Dr. James Bean, had advised him not to have surgery until the pain became unbearable. (Tr. 317-18). He had actually stopped working at his job in a coal preparation plant on October 31, 2002 due to surgery by Dr. Bean on a ruptured disk in his neck. (Tr. 313). The surgery had helped his problem with left arm pain and numbness, but he then began having difficulties with his right arm and hand. (Tr. 319, 333). He could not sit for long because of his lower back pain, or reach or handle objects because of his arm and neck problems. (Tr. 324-7).

Records from Dr. Bean show that he did evaluate the plaintiff in February, 2001 for acute left hip pain and leg pain, and an MRI showed a "significant" left disc herniation at the L5-S1 level. (Tr. 165, 269). While there was diminished sensation in the left foot and the left ankle reflex was absent, Dr. Bean noted that the plaintiff had improved somewhat, and recommended conservative management. (Tr. 269).

8

He felt that surgery might not be of long-term benefit, and encouraged Mr. Gross to keep his job as long as possible. (Id.). No specific functional restrictions are given. Subsequently, Mr. Gross complained of pain in his left neck, shoulder, and arm (Tr. 268), and, although a physical examination showed no motor deficit or sensory loss, Dr. Bean performed a C6-7 diskectomy and fusion on October 31, 2002 (Tr. 176-7). Although the operation was considered to be a success in resolving the left arm pain, by February, 2003, Mr. Gross complained of right neck, shoulder, and arm pain (Tr. 264). An MRI showed a degenerative bulge at the C-5-6 level, and Dr. Bean concluded that Mr. Gross was at maximum medical improvement, and was limited to performing work requiring no lifting of over 15 to 20 pounds, no work overhead, and no work with his head in a tilted or twisted position. (Tr. 263).

The only other functional capacity assessment by an examining source was given by Dr. James Templin, who saw the plaintiff on one occasion in August, 2003. (Tr. 274). Dr. Templin apparently reviewed in previous records, and his physical examination showed that Mr. Gross had tenderness and a decreased range of motion of the cervical spine, increased pain with abduction or adduction of either arm against resistance, and mild tenderness of the back. (Tr. 274-7). Mr. Gross was able to forward flex 76 degrees at the waist, and had normal bilateral lateral flexion. (Tr. 277). Dr. Templin found decreased sensation in the left leg in a dermatomal pattern "fairly consistent with L5," a reduced range of motion of the hips, positive straight leg raising on both the left and right, and poor balance on deep knee bends.

9

(Id.). In contrast to Dr. Bean's 2001 examination, however, ankle reflexes were equal and strong bilaterally. (Id.). Dr. Templin completed a functional capacity assessment which was adopted by the ALJ, and given in the hypothetical question to the VE, supra. (Tr. 278, 283).

Although the plaintiff makes a non-specific argument that the ALJ's choice of hypothetical restrictions is not supported by substantial evidence, no physician identified greater restrictions than Dr. Templin.[1] When given Dr. Bean's restrictions, the VE stated that there were jobs the plaintiff could perform (Tr. 340), so, no matter which source is given controlling weight, the result is the same. The plaintiff also asserts that the ALJ did not properly evaluate his subjective complaints of pain, but a review of the ALJ's decision shows that the ALJ's discussion (Tr. 19-20) was adequate under the standards set out in Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

The plaintiff primarily argues that his condition meets the Commissioner's Listing of Impairment (LOI) 1.04 for disorders of the spine. LOI 1.04 has three alternative ways of being met, but the only portion possibly applicable to Mr. Gross is 1.04A, which requires "evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by

---

[1]The Court notes in passing that, while the number of jobs identified by the VE is fairly small (Tr. 342-3), the plaintiff has not made any challenge on this ground.

Gross

sensory or reflex loss and, if there is involvement of the lower back, positive straight leg raising test (sitting and supine)." 20 C.F.R Pt. 404, Subpt. P, App. 1 (2004). As previously noted, Dr. Bean did not find any motor, sensory, or reflex deficits of the left arm even prior to surgery (Tr. 258, 268), and neither he or Dr. Templin noted any motor, sensory, or reflex deficits of the right arm (Tr. 262-4, 276). Although Mr. Gross had a reflex deficit in his left ankle when Dr. Bean examined him in February, 2001, the only recorded examination of his lower extremities following his alleged onset date of October 31, 2002 was by Dr. Templin, at which time his reflexes were equal. Therefore, on this ground alone, the plaintiff does not meet all the requirements of LOI 1.04A. Nor is there any specific evidence regarding lower extremity atrophy or muscle weakness. Consequently, this argument must also fail.

The decision will be affirmed.

This the _____/8_____ day of May, 2005.

G. WIX UNTHANK
SENIOR JUDGE

11